JAMES P. STEELE *vs.* FRED W. ESTABROOK & others.
HERVEY W. ESTABROOK & others *vs.* JAMES P. STEELE.

Middlesex.   November 18, 19, 1918. — March 6, 1919.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Partnership*, Dissolution, Accounting.   *Election*.

Where a brother of one of two partners, doing business under a partnership agreement containing no provision as to the time during which the partnership was to continue, who had advanced money for the business and believed the firm to be insolvent, although it was not, caused a corporation to be formed, of which he owned substantially all the stock, and the partnership business and assets to be transferred to such corporation which assumed the liabilities of the partnership, with the assent of his brother but without the consent of his brother's partner and against that partner's wish, the transfer put an end to the partnership and it was thereby dissolved.

The partner without whose consent the transfer, as above described, of the assets of the partnership was made brought a suit in equity against his former partner and such former partner's brother and the corporation to which the transfer was made, praying for an accounting of the partnership affairs and for the payment to him of the value of his interest in the partnership property.   *Held* that, when the partnership was brought to an end by the unauthorized transfer, the plaintiff had the right to have the partnership accounts taken and his interest in the partnership property ascertained, and that, when such interest had been ascertained, the plaintiff then had the further right to recover the value of such interest from his former partner and from the corporation to which such former partner had undertaken to assign the property of the partnership upon the corporation assuming the debts of the partnership.

In the suit above described it was *said* that, after the wrongful transfer of the partnership property to the corporation, the plaintiff had had the right to treat the transfer as a nullity (except so far as the defendant partner's interest in the partnership property was concerned) and to have the partnership affairs wound up through a sale of the partnership property by a receiver appointed by the court; but that the plaintiff had elected not to pursue this right.

In the same suit it was *held* that, although the partnership property did not pass to the corporation by the wrongful transfer upon the corporation assuming the payment of the partnership debts, yet in equity the defendant partner's interest in the partnership property passed to the corporation, and that this gave to the corporation a right to pay the debts of the partnership, which were a lien on the partnership property of which the corporation had become part owner.

In the suit above described it was found that the value of the plaintiff's interest at the time of such dissolution of the partnership by the attempted transfer was $714.   The plaintiff, however, did not show that this $714 to which the plaintiff

was entitled at the time of such dissolution earned any profits while in the hands of the defendants, and it accordingly was *held* that the plaintiff was entitled to $714 and to interest on that sum from the time of such dissolution.

In the suit above described the plaintiff's bill contained the following prayer: "That the defendants . . . be ordered to pay to the plaintiff the value of his interest in said personal property, bills receivable and said real estate and in the good will of said concern and the damages for taking and appropriating the same." *Held,* that under this prayer, the trial judge was right in making a decree ordering the plaintiff, on being paid the sum of $714 with interest from the time 'of such dissolution, to convey to his former partner his interest in the various items of partnership property which they had owned in common.

In the same case it was *pointed out* that the plaintiff, by asking for an accounting on the terms of the prayer quoted above, had offered to convey his interest in such part of the partnership property as required a conveyance to pass the title.

In the suit above described there were besides the defendant partner of the plaintiff and the defendant corporation two individual defendants, who were brothers of the defendant partner, and the findings showed that they had participated in the wrongful transfer to the corporation, and it was *held* that these individual defendants as well as the defendant partner and the corporation were bound to repay to the plaintiff the $714 with interest from the time of the dissolution.

BILL IN EQUITY, filed in the Superior Court on March 5, 1914, by James P. Steele against Fred W. Estabrook, John W. Estabrook, Hervey W. Estabrook, the Marlborough Grain Company and the Peoples National Bank, praying for an accounting between the plaintiff and all the defendants except the defendant bank of all the property and assets of the partnership between the plaintiff and the defendant Hervey W. Estabrook, including the land, elevator sheds, personal property, good will, horses, wagons, grain and accounts receivable and all matters and things connected with such partnership at the time and after its property and business were assumed and taken over by the defendant Marlborough Grain Company and the three individual defendants; also a

CROSS BILL IN EQUITY, filed in the Superior Court on July 18, 1916, by Hervey W. Estabrook, Fred W. Estabrook and the Marlborough Grain Company against James P. Steele, praying that, if it should be found that there had been no legal dissolution of the copartnership that formerly existed between the plaintiff Hervey W. Estabrook and the defendant, a decree should be entered for a final dissolution of such partnership.

The two cases were referred to the same person as master, who

filed a report in each of the cases containing the findings that are stated in the opinion.

The cases were heard together by *Fox,* J., upon the master's reports. In the first case the judge made the following final decree:

"This case came on to be heard upon the report of the master, and exceptions thereto, and upon consideration thereof it is ordered, adjudged and decreed that the defendants Hervey W. Estabrook and the Marlboro Grain Company pay to the plaintiff, within thirty-three days after the entry of this decree, seven hundred fourteen dollars and thirty-five cents and interest thereon at six per cent from December 31, 1913, until the time of payment, together with the plaintiff's costs taxed at ninety dollars, and thereupon the plaintiff shall execute and deliver proper instruments transferring to the defendant Hervey W. Estabrook his interest in the real estate, life insurance policy, and other assets of the partnership free from any incumbrances made by him during the pendency of these proceedings, and from any attachments for the plaintiff's personal indebtedness, and that the partnership heretofore existing between the plaintiff and Hervey W. Estabrook be and is hereby dissolved.

"That the bill as to the Peoples National Bank be dismissed.

"The master's report is confirmed, and the exceptions thereto are overruled, except as indicated herein, and in the memorandum of the court on file."

The plaintiff appealed.

In the cross suit the judge made the following decree: "This case came on to be heard upon the report of the master, and exceptions thereto, and upon consideration thereof it is ordered that the master's report be confirmed, and that the exceptions thereto be overruled, except as indicated by the memorandum of the court on file, and that the bill be dismissed." Both the plaintiffs and the defendant appealed.

*D. W. Steele & J. J. Shaughnessey,* (*F. P. O'Donnell* with them,) for James P. Steele.

*A. P. Worthen,* (*R. H. Beaudreau* with him,) for Fred W. Estabrook and others.

LORING, J. From the master's report in the first of these two cases it appears that before January 1, 1914, James P. Steele and

Hervey W. Estabrook were partners in the grain business in Marlborough. Fred W. Estabrook (a brother of Hervey) had made large advances to Hervey or to the firm and had become an accommodation party (either as maker or indorser) on the firm's notes to the amount of $17,400. On December 8, 1913, he made a further advance to his brother Hervey in the sum of $1,200 to be used in paying some pressing obligations of the firm. Later during that month he sent his brother John to examine the firm's books. John reported that the firm was insolvent and Fred Estabrook believed that to be the fact. Fred also believed that Steele was inefficient. Under these circumstances he came to the conclusion that he would be compelled to pay the notes of the firm (amounting to $17,400) to which he was a party "and that he would be able to recover little or nothing upon the loans he had made to Hervey in connection with the business. He believed himself to be the largest creditor and felt that he 'owned the business.'" Thereupon he determined to organize a corporation with a capital stock of $10,000 (all of which was to be issued to him except two shares which were to be issued one to Hervey and one to John) to take over the assets of the partnership on the corporation assuming its outstanding liabilities and "that Steele should cease to have any control or management of the business, but might remain as an employee." The master found, "if material, that Hervey W. Estabrook assented to the course of action directed by his brother Fred and told the latter that he, Hervey, had talked the matter over with Steele, and that Steele also assented to it, and had agreed to go on as an employee of the corporation. I further find that Hervey, in stating that Steele had assented, misunderstood Steele's attitude, and misrepresented the fact. I find that Steele had not assented, and never did assent." The master further found that "there was no conspiracy or combination with unlawful intent to deprive the plaintiff of his rights or property, but that the defendants acted as they did in the belief that such action was necessary to preserve their own rights and property and especially to protect the money which F. W. Estabrook had loaned 'to the business,' as he described his loans." The corporation was formed and on January 1, 1914, took over the business on the terms stated above. There seems to have been some informality in the organization of the

corporation which was not disposed of until January 7, but the parties are agreed that in spite of this the case should be dealt with on the footing that the corporation took over the business on January 1, 1914. "Soon after the corporation was organized Steele was told by Hervey Estabrook of that fact, and that Steele could remain as an employee, if he wished. Steele did remain for several weeks, but he did so in order to protect his own interests, and not as an employee." After January 1 Hervey and Steele continued "to draw $18 a week each, the same amount which they had been drawing weekly [from the partnership] for some time prior to the organization of the corporation. There was no interruption of the business, which continued to be carried on at the grain elevator and under the name of the Marlborough (or Marlboro) Grain Company." At the close of business on Saturday, February 21, Steele left the service of the corporation and on March 4, 1914, brought the bill in the first case against Hervey, Fred, John, the new corporation and the bank by which the $17,400 notes (referred to above) were held. The relief asked for was an accounting for all the partnership property and business "at the time and since it was assumed and taken over by said defendant corporation and said three defendants" and that "the defendants except said bank be ordered to pay to the plaintiff the value of his interest in said personal property, bills receivable and said real estate and in the good will of said concern and the damages for taking and appropriating the same." The case was sent to a master. At the hearings before the master Steele's counsel stated that the plaintiff "does not seek at this time and by this bill a dissolution of the partnership and an accounting between himself and his partner Hervey W. Estabrook. For this reason I [the master] have not attempted to state such an account, nor to determine and report upon certain matters which must be determined in such an accounting." It is stated in the master's report that what "the plaintiff seeks to establish in the present cause" is "a settlement of his rights as against the defendants collectively and [that he Steele] desires that findings of values be made only so far as such findings may be necessary to make clear the value of the [personal] property, which, in the plaintiff's [Steele's] view, have been taken from him by the defendants, without

right." By reason of this statement made by counsel the master did not undertake in his report in the first suit to state the partnership accounts. But he did find "that on December 31, 1913, the value of the movable machinery and appliances in the elevator building and the sheds, office furniture, horses, wagons, harnesses, stable furnishings, merchandise in stock, cash on hand, bills receivable, good will, and all the other assets which were taken over, used and dealt with by the Messrs. Estabrook and by the corporation as an owner (the real estate being excepted) was $18,160.94." The principal asset of the partnership was a grain elevator erected on land which had been bought by and conveyed to Steele and Hervey and which still stands in their names. While the first case was before the master a cross bill was brought by Hervey, Fred and the corporation against Steele. This bill was filed on July 18, 1916. The plaintiffs in this bill asked "That if it shall be found that there has been no legal dissolution of the copartnership which at one time existed between the plaintiff Hervey W. Estabrook and the defendant, then that a decree be entered for the final dissolution of said copartnership," and they further asked that the partnership accounts between Hervey and Steele should be taken and if a balance was found due to Hervey a decree should be entered directing the defendant to pay the same to him. In addition the plaintiffs alleged that Steele had agreed that the partnership property should be conveyed and assigned to the corporation upon its assuming the liabilities of the partnership and they asked that a decree be entered directing Steele specifically to perform that agreement. This case was sent to the same master before the master had made his report in the first case. The master completed his report in the first case after hearings in the second case had begun, and without objection on the part of the parties to both causes he sealed up this report and later on when he had completed his report in the second case he made a supplemental report in the first case. In the Superior Court the three reports were treated as made in both cases. In his report in the second case the master found and stated the partnership account between Hervey and Steele. He found that on December 31, 1913, Steele had overdrawn his account to the amount of $1,615.53 and Hervey had overdrawn his account to the amount of $756.72.

He further found that (treating these overdrafts as assets) the property of the firm amounted to $42,733.19 and its liabilities to $38,073.43. In other words including the overdrafts (which together amount to $2,372.25) he found that there was an excess of assets over liabilities amounting to $4,659.76 and that disregarding the overdrafts as assets there was a net excess of assets over liabilities to the amount of $2,287.51 and that this excess of assets over liabilities belonged (after deducting their overdrafts) to Steele for the amount of $714.35 and to Hervey for the amount of $1,573.16.

In addition the master found the state of the partnership account as of July 18, 1916, when the bill in the second case was filed by Hervey, Fred and the corporation against Steele. In stating the partnership account as of this later date he added to the assets found by him to be the assets of the partnership on December 31, 1913, an amount "due from the corporation for use and occupation of the elevator building" since January 1, 1914, amounting to $5,574. He also added $2,530, the surrender value on July 18, 1916, of a life insurance policy which the partners had assigned to Fred to secure him against loss by reason of his liability as accommodation maker or indorser on its notes. From the partnership liabilities outstanding on December 31, 1913, he deducted the notes held by the bank amounting to $17,400 on the ground that these notes had been paid between December 31, 1913, and July 18, 1916, by the corporation and that that payment was a voluntary payment as against Steele. For the same reason he deducted the accounts payable of the firm outstanding on December 31, 1913, amounting to $4,659.76 and afterwards paid by the corporation. In order to keep alive the policy that had been assigned to him as security for his liability on the partnership notes, Fred W. Estabrook had paid the premiums on the policy which accrued between December 31, 1913, and July 18, 1916. The master found and ruled that the payment of these premiums by Fred was a voluntary payment as against Steele and refused to allow it in the account of the partnership affairs as of July 18, 1916. The surrender value of this policy as of December 31, 1913, was $1,700, and it had gone into the account of the assets and liabilities of the partnership as of that date. Consequently $1,700 was deducted from the assets as of December

31, 1913, and the full surrender value (disallowing the premiums which had been made to keep the policy alive in the interim), namely, $2,530, was carried in as an asset of the partnership on July 18, 1916. The master found that this basis was the correct way of stating the partnership account as of July 18, 1916. On this basis the amount due Steele on July 18, 1916, was $14,946.23.

The two cases came on to be heard in the Superior Court on the master's reports and on various exceptions taken to them. The exceptions taken to the reports were overruled and a decree was entered dismissing the cross bill filed by Hervey, Fred and the corporation against Steele. In the suit brought by Steele against Fred, John, Hervey, the corporation and the bank a decree was entered directing Hervey and the corporation to pay to the plaintiff $714.35 with interest from December 31, 1913, together with the plaintiff's costs and directing that upon said payment being made "the plaintiff shall execute and deliver proper instruments transferring to the defendant Hervey W. Estabrook his interest in the real estate, life insurance policy, and other assets of the partnership free from any incumbrances made by him during the pendency of these proceedings, and from any attachments for the plaintiff's personal indebtedness, and that the partnership heretofore existing between the plaintiff and Hervey W. Estabrook be and is hereby dissolved. That the bill as to the Peoples National Bank be dismissed." The cases are now before us on appeals taken by both parties from the decree entered in the second suit and on an appeal taken by Steele from the decree in the first suit.

In the agreement of partnership between Hervey and Steele there was no provision as to the time during which the partnership was to continue. Under these circumstances either party had a right to terminate the partnership at will. *Fletcher* v. *Reed,* 131 Mass. 312. *Wiggins* v. *Brand,* 202 Mass. 141, 147. The partnership between them therefore came to an end on December 31, 1913. This fact has been ignored and the two cases now before us have fallen into confusion because this fact has been ignored.

When the partnership was ended on December 31, 1913, Hervey and Steele were owners in common of the partnership property but until the partnership accounts had been taken it was not known

what the proportions of their ownership were. When the partnership was brought to an end Steele had a right to have the partnership accounts taken and his interest in the partnership property ascertained. And when it had been ascertained he had the further right to recover the value of that interest from Hervey, his copartner, and from the corporation to which Hervey without right had undertaken to assign the property of the partnership on the corporation assuming the partnership debts. Steele also had the right to treat the transfer of the partnership property made to the corporation by Hervey as a nullity (except so far as Hervey's interest in the partnership property was concerned) and to have the partnership affairs wound up through a sale of the partnership property by a receiver appointed by the court. But this right he elected not to pursue. In the bill which he brought Steele prayed for an accounting of the partnership affairs and for payment to him of "the value of his interest" in the partnership property. At the hearings before the master he stated that what he wanted was to have the master ascertain the value of the personal property of the partnership which the defendants had wrongfully taken. The master found in accordance with this request that the value of the partnership property other than the real estate wrongfully taken by Hervey, Fred, John and the corporation was $18,160.94. But, if the case had been submitted to the court on that finding alone, Steele's bill would have had to be dismissed. Steele was not the owner of the partnership property wrongfully taken by Hervey, Fred, John and the corporation. That property was owned not by Steele, but by Steele and Hervey. Steele had no right to maintain a bill for the wrongful taking over of that property by Hervey, John, Fred and the corporation. The parties plaintiff in an action at law for the conversion of partnership property or in a bill in equity which is the equivalent of such an action at law, were Hervey and Steele, not Steele alone. See, in this connection, *Pratt* v. *McGuinness*, 173 Mass. 170.

But, as we have said, Steele was entitled to have the value of his interest in the partnership property ascertained as of the date when the partnership came to an end, namely, December 31, 1913, and when "the value of his interest" in the partnership property (to quote from Steele's prayer in the first case) had been

ascertained he had a right to have that paid to him by the defendants in that suit with the exception of the bank.

Inasmuch as the interest of the plaintiff in the partnership property (amounting to $714.35) was wrongfully used by the defendants in the first suit (other than the bank) in carrying on the same kind of business as that which had been carried on by the partnership before it came to an end (on December 31, 1913) the plaintiff was entitled to the profits which his $714.35 earned in the business thereafter carried on by these defendants. If Steele had shown what the profits of that business were he would have been entitled to a share in those profits based upon the fact that $714.35 of his money was used in carrying on that business. *Moore* v. *Rawson*, 185 Mass. 264. But Steele did not show that the corporation had earned any profits in carrying on the business carried on by it. Under these circumstances the plaintiff is entitled to interest on $714.35 from December 31, 1913.

Steele was not entitled to have an accounting as of July 18, 1916. The partnership had come to an end two years and a half before.

We are of opinion that the master's ruling that the payment of the partnership debts by the corporation was a voluntary one so far as Steele was concerned was wrong. Although the partnership property did not pass to the corporation by virtue of Hervey's assignment of it to the corporation on its assuming payment of the partnership debts, this assignment by Hervey (in equity at least) transferred to the corporation Hervey's interest in the property of the partnership which was brought to an end by this transfer to the corporation. The corporation had a right to pay the debts which were a lien on the partnership property of which it was part owner.

Steele has excepted to the findings by the master that the notes held by the bank amounting to $17,400 were valid obligations of the partners (either as makers or indorsers) on December 31, 1913, and were not barred by the statute of limitations when they were paid by the corporation. The evidence on which these findings were made is not before us. The findings must stand.

Steele's last contention is that the final decree in the first suit was wrong in that it directs him to convey to Hervey his interest

in the partnership property upon being paid the $714.35 with interest from December 31, 1913.

There would be no question of its correctness if a clause had been inserted in the decree providing for a conveyance by Steele as a condition on which payment of the $714.35 was to be made. Steele is not entitled to full payment of "the value of his interest" in the property of the partnership and at the same time to keep title to such portions of it as stand in his name. But the provision in the decree now in question provides, not that payment shall be made on Steele making a conveyance, but that Steele shall make a conveyance on the defendants making payment. Steele has argued that this "amounts to a decree for specific performance of a contract that the master finds the plaintiff never made." That is not so. The contract set up in the cross bill by the defendants in the first suit was a contract to convey the partnership property to the corporation upon the corporation assuming payment of the partnership debts. Steele was successful on the issue of his having made that contract. What the decree directs Steele to do is to convey his interest in the partnership property, not upon the corporation paying the partnership debts, but on these defendants paying Steele $714.35 with interest from December 31, 1913, in addition to the payment of the partnership debts which has been made already.

But the question still remains whether the decree should have directed Steele to convey on the defendants paying him this sum. On what ground, it may be asked, can the court order Steele to convey his half interest in the land on which the elevator was erected bought by and conveyed to Hervey and to him, since he has never agreed to convey his interest in that real estate. The answer is that in and by the second prayer of his bill Steele has asked that the accounts should be taken on the footing that the defendants have wrongfully taken and appropriated that property and that they be ordered to pay the plaintiff for the value of his interest in that property on that footing. A copy of the second prayer is set forth in a footnote.* The accounting made by the

---

* The second prayer of Steele's bill in the first suit was in these words: "That the defendants except said bank be ordered to pay to the plaintiff the value of his interest in said personal property, bills receivable and said real

master was made on that footing and the value of the elevator in that accounting was placed at $20,000. Steele cannot have an accounting on that footing and keep his title to a half interest in the elevator. Asking for an accounting on that footing is in and of itself an offer to convey his title to the elevator and to the other property which ought to be the subject of a conveyance. The accounting asked for by him has been made on the basis on which he asked that it should be made. On that basis $714.35 with interest from December 31, 1913, is due to Steele. Under these circumstances the Superior Court was right in directing Steele to make the conveyance specified in the decree on the $714.35 being paid to him with interest from December 31, 1913.

The decree dismissing the bill in the second suit must be affirmed without costs.

The decree in the first suit was correct in substance. But it must be modified in some of its details. In the first place no disposition has been made of the bill in that suit so far as John W. Estabrook and Fred W. Estabrook are concerned. In the final decree no relief is given as against these defendants on the one hand and on the other hand the bill is not dismissed so far as they are concerned. We are of opinion that, since they participated in the wrongful assignment to the corporation, they as well as Hervey and the corporation are bound to repay to the plaintiff the $714.35 with interest from December 31, 1913.

In the second place the clause in the decree which provides "that the partnership heretofore existing between the plaintiff and Hervey W. Estabrook be and is hereby dissolved" ought to be stricken out. The partnership between Hervey and Steele was dissolved by force of the action taken by Hervey on December 31, 1913. That being the fact, it is proper that a recital of that fact should be inserted in the decree but it is not proper to provide in the decree that the partnership "be and is hereby dissolved." Such a provision in the decree is improper because the partnership is not dissolved by force of the decree.

Neither party is to have costs of appeal in the first suit.

*Decrees accordingly.*

---

estate and in the good will of said concern and the damages for taking and appropriating the same."