WILLIAM H. MURRAY *vs.* REGINALD I. BATEMAN & others.

Suffolk.　November 10, 1943. - · November 30, 1943.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*Partnership*, Dissolution, Accounting.　*Good Will.　Value.*

Subsidiary facts found by a master respecting the good will of a partnership at will, which had been formed for the conduct of a school near large ship yards for the instruction of shipfitters and was dissolved within a few weeks after it was formed, did not support a conclusion by him, based solely on such facts, that the value of the good will at the time of dissolution was a sum which was equivalent to the amount of conjectural anticipated profits if the school were continued two years.

BILL IN EQUITY, filed in the Superior Court on May 5, 1942.

The case was heard by *Brogna*, J., upon a master's report.

*E. J. Murray*, (*J. P. Clair* with him,) for the plaintiff.

No argument nor brief for the defendants.

RONAN, J.　This is an appeal by the plaintiff from a final decree, ordering the defendants to pay him $250 and interest, which was entered in a suit brought by the plaintiff praying for the dissolution of a partnership and for an accounting.　The only contention of the plaintiff is that the amount awarded him by the final decree should be increased by $3,750, the value of his interest in the "good will," so called.

We now recite the material findings of the master.　The plaintiff was the only witness before the master.　The defendants filed no answer and were not represented in this suit.　The plaintiff by training and experience had acquired great skill as a rate setter, a position that required considerable knowledge of ship construction and ability to read blueprints in order to enable him to estimate the time necessary to perform certain piece work involved in the building of a ship.　He was engaged as a rate setter by the Bethlehem Steel Company in the early summer of 1941,

when he entered into an oral partnership agreement with the defendants in accordance with which they were to establish and conduct a school for instruction for shipfitters. None of the parties was to receive any salary, but each was to have one fourth of the profits. The agreement fixed no time for its duration. There was a scarcity of shipfitters, and there was a good opportunity to obtain students as there was no similar school in greater Boston. The plaintiff secured quarters for the school and fitted them up. The school opened on June 22, 1941, with an enrollment of sixty students, which later was increased to eighty. Each student paid $20 as tuition for a course lasting ten weeks. After deducting $200 for rent and for the cost of equipment from $1,600, the total amount received in tuition fees, the parties on July 7, 1941, intended to divide the balance of $1,400 equally among them. The plaintiff, however, received only $100; and the balance of $250 with interest is the amount that the final decree awarded to him. The defendant Whyte on July 22, 1941, ordered the plaintiff to leave the school premises. The three defendants wrote the plaintiff on July 28, 1941, that the partnership was dissolved. The master found that the partnership was dissolved on this date. The plaintiff visited the school after the receipt of this letter and saw the wife of one of the defendants collecting tuition fees, taking the attendance and doing work that the plaintiff had formerly done. The defendants advertised in the newspapers that the next class would commence on September 4, 1941.

The master placed a valuation of $15,000 on the good will and found that the plaintiff's interest was worth $3,750. The good will of a partnership is an asset of the firm, and a partner appropriating it to his own use must account for its value as he would for any other property of the firm which he has taken for his sole use. *Moore* v. *Rawson*, 185 Mass. 264. *Hutchins* v. *Page*, 204 Mass. 284. *Costa* v. *Costa*, 222 Mass. 280.

The master states that it is difficult to ascertain the value of the good will, and he made two attempts to do so. The master reports that, in view of the conditions existing in

the shipbuilding industry and conditions that might possibly exist for the next five years, he did not deem it unreasonable to find that the school would continue for two years, that the fees collected would amount to $16,000 and the expenses to $1,000 leaving the future net earnings as $15,000, and that the plaintiff's share would amount to $3,750. What the master started to ascertain was the value of the good will, but what he was actually endeavoring to ascertain was the amount of the anticipatory profits that the plaintiff would have received if the school continued for two years and the plaintiff had remained as a partner during that period. The value of the good will of a going business depends to some extent upon the earnings that the business has made, *Barden Cream & Milk Co.* v. *Mooney*, 305 Mass. 545; *Commissioner of Corporations & Taxation* v. *Ford Motor Co.* 308 Mass. 558, but the value of the good will is not the sum total of the profits that might be obtained in the future. Good will is generally understood to mean the advantage that accrues to a business on account of its name, location and reputation, which tends to enable it to retain the patronage of its old customers. *Moore* v. *Rawson*, 199 Mass. 493. *Gaines* v. *Hake*, 247 Mass. 88. *Ruggiero* v. *Salomone*, 248 Mass. 237. *Martin* v. *Jablonski*, 253 Mass. 451.

The agreement by which the partnership was created did not fix the period of its duration. It was an agreement for a partnership at will and any party could retire from the firm at any time he desired, *Fletcher* v. *Reed*, 131 Mass. 312; *Avery* v. *Craig*, 173 Mass. 110; *Wiggins* v. *Brand*, 202 Mass. 141; *Steele* v. *Estabrook*, 232 Mass. 432, and, the withdrawal being lawful, the plaintiff would not have any right on that account to claim damages because he was thereby deprived of sharing in the future profits of the business. But if such anticipatory profits are in any case admissible to show the value of the good will at the date of the dissolution, then such profits cannot be considered as evidence of value unless they can be determined as a practical matter upon evidence that proves them by a fair degree of certainty and accuracy. Here nothing appears as to the amount of money received by the school, its expenses, or the number of students at

any time after July 7, 1941. Indeed, there was no finding even that the school was in existence at the time of the hearing before the master. This estimate of the master rested upon nothing more substantial than speculation, surmise and conjecture. *Fox* v. *Harding,* 7 Cush. 516. *Noble* v. *Hand,* 163 Mass. 289. *Todd* v. *Keene,* 167 Mass. 157. *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8. *Lowrie* v. *Castle,* 225 Mass. 37. *Curtis* v. *Boston Ice Co.* 237 Mass. 343. *Lalime & Partridge, Inc.* v. *Hobbs,* 255 Mass. 189. *Busy Bee Confectionery Co.* v. *Broadway National Bank,* 258 Mass. 360. *Narragansett Amusement Co.* v. *Riverside Park Amusement Co.* 260 Mass. 265.

Profits made by the remaining partners subsequently to dissolution, through the employment of the firm's assets, must be accounted for to the partner who has retired and has not been paid his share of the assets. *Freeman* v. *Freeman,* 142 Mass. 98. *Robinson* v. *Simmons,* 146 Mass. 167. *Jepson* v. *Killian,* 151 Mass. 593. *Moore* v. *Rawson,* 185 Mass. 264. *Steele* v. *Estabrook,* 232 Mass. 432. *Shelley* v. *Smith,* 271 Mass. 106. But for reasons already stated, profits not proved by the requisite degree of certainty cannot be considered.

The plaintiff, however, was entitled to an accounting which should include the value of the good will, if it had any value. The master made a second attempt to determine this value. He reported that he valued the good will at $15,000 and the plaintiff's interest at $3,750. It is to be noted that this is the amount of his share of the anticipatory profits, which we have already discussed. The report expressly gives the basis upon which the master arrives at the valuation of $15,000. It rests upon the following findings: that there would be an increasing demand for additional instructors and schools as the necessity for further shipbuilding arose and facilities for the construction of ships were furnished; that those then dependent for instruction at their places of employment would seek instruction at schools; that the school was located near three large shipyards; and that he gave credence to the testimony of the plaintiff that he expected shipbuilding to continue for five years, on ac-

count of his knowledge of shipbuilding, his ability to weigh the opinions of experts and the general information gained from his employment.  It is again to be noted that the master did not adopt the opinion of the plaintiff that there would be necessity for the school for five years, and, as the master expressly reports, there was no evidence that the school would continue for five years.  Since the report shows upon its face all the subsidiary facts which the master had in mind and upon which he based his finding of the value of the good will, we are in no way bound by that general finding, and we must take these subsidiary findings together with the inferences that ought to be drawn from them and reach our own conclusion.  *Robinson* v. *Pero*, 272 Mass. 482.  *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431.  *Busteed* v. *Cambridge Savings Bank*, 306 Mass. 9.  *Boyer* v. *Bowles*, 310 Mass. 134.

The facts that the school was conveniently located and that the demand by shipbuilders for instructors would continue for some time do not furnish any rational basis for the master's conclusion as to the value of the good will of a school which was in the nature of an experiment, where nothing is shown as to the actual condition of the venture later than six weeks after its inception.  The conclusion of the master cannot be sustained by his subsidiary findings, but on the facts found by the master the final decree was right.

*Decree affirmed.*