ROGER C. JOHNSON & another[1] *vs.* DONALD C. KENNEDY
& others.[2]

Plymouth.    December 6, 1965. — February 14, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & SPIEGEL, JJ.

*Partnership,* Dissolution, Accounting.

A dissolution of an oral equal partnership of indefinite duration by a part-
ner's secretly removing the agency funds and its books, records and
furniture shortly before the partners were to meet, discuss and sign a
partnership agreement providing that the partnership should last for
twenty-five years was lawful under G. L. c. 108A, § 31, and did not
entitle the other partners to damages; and upon an accounting the part-
ners were entitled to equal shares of the partnership assets.

BILL IN EQUITY filed in the Superior Court on Decem-
ber 17, 1963.

The suit was heard by *Sgarzi,* J., on a master's reports.

*Alton F. Lyon* for the plaintiffs.
*David D. Dretler* for the defendants.

KIRK, J.   In this bill in equity for an accounting and for
damages consequent upon the dissolution of a partnership,
formed by oral agreement, all of the issues presented for
determination are effectively raised by the plaintiffs' ap-
peal from the final decree.   The issues involved are, first,
whether the dissolution was lawful or wrongful, and sec-
ond, whether an appropriate method of accounting was
employed in distributing the firm's assets.   The facts un-
derlying these issues appear in the initial and supplemen-
tary reports of the master.

In his initial report the master found the following facts.
In April, 1961, the plaintiffs Johnson and Walker joined
with the defendant Donald C. Kennedy (Kennedy) in form-
ing an insurance agency partnership to be known as the

---

[1] A. Thomas Walker.
[2] Marjorie Kennedy, Rockland Trust Company, Rockland Credit Union.

Triangle Insurance Agency (Triangle). The arrangement was oral. There was no agreement as to how long the partnership would continue. It was agreed that each would have a one-third interest in the partnership. The place of business was in Rockland where the partners rented and modestly furnished an office adjacent to another insurance agency operated by Johnson's mother-in-law, who answered the daytime telephone calls to Triangle. In the evening the men serviced the accounts and telephone calls. Triangle's business certificate was signed by and named Kennedy only, and the bank accounts were opened in his name. Originally the partners were to work part time for the agency. Each brought in some business. In April, 1962, Kennedy began to devote full time to the business. Johnson and Walker continued to work part time. Kennedy's wife assisted the firm by doing clerical work, and, from September, 1963, received $25 a week. When Kennedy went to work full time, it was agreed that he would receive $100 a week when the business could afford the salary. It is unclear when the firm began paying Kennedy, but it appears that it was at least from the summer of 1962.

In August, 1963, the partners retained counsel to prepare a written partnership agreement. By December 7, 1963, the agreement was drawn. It provided that the partnership was to last for twenty-five years from January 1, 1964. The three partners were to meet, discuss and sign the agreement on December 16, 1963.

Meanwhile, early in December, 1963, Kennedy secretly consulted an attorney about owning the business himself, and, without consulting Johnson and Walker, arranged that the Triangle bank accounts be held jointly with his wife. In November, Kennedy drew more than twice his salary from the agency. This caused some dispute among the partners, and Johnson took the agency's books to his home for review. On December 13, Kennedy transferred the agency funds to two Boston banks, concealing their location from the other partners, opening one account in his wife's name alone, and the other in the name of Triangle with his

wife having the right to withdraw. On the night of December 14, 1963, Kennedy secretly removed all books, records and furniture from the office to another office a block away where he opened for business under the Triangle name. On December 17, Johnson and Walker brought this bill, claiming wrongful dissolution and a right to damages. Kennedy denied, inter alia, that the dissolution was wrongful or that damages were due. By way of counterclaim, he sought alleged unpaid compensation for his work and also contribution pursuant to an alleged agreement by the plaintiffs to pay his costs in defending an action against him which was commenced before but tried after the partnership was formed.

In his initial report, the master found that there had been a rapid and substantial growth in Triangle's business, that total receipts for 1962 were $30,484.94 and for 1963 were $57,777.62. He found that Kennedy took $1,600 more than he was entitled to in 1963. He further found that, in light of local conditions, low operating costs, and a low business loss ratio, the fair market value of the firm was $25,000. He stated that there was insufficient evidence to make an accounting.

On these subsidiary facts, the master concluded generally that the dissolution of the firm caused by Kennedy's actions was wrongful, and that damages should be assessed against Kennedy in the amount of $8,333.33 in favor of each plaintiff, that amount being one third of what the master found to be the firm's fair market value, namely, $25,000.

The defendants Kennedy objected to various parts of the report, and specifically asked that the case be recommitted for an accounting. The case was recommitted for that purpose.

The supplemental report set out the debits and credits of the agency for 1962 and 1963. The gross profit for 1962 was $5,338.53, and $7,842.96 for 1963. On the basis of the 1963 profit, the master computed the fair market value of the agency at $25,000, the same estimate made in the initial report. He cross-checked the estimate by capitalizing the

increase in gross profits from 1962 to 1963, $2,504.43, at ten per cent, arriving at the same estimate of approximately $25,000. On this basis, the master found that Johnson was entitled to the net sum of $9,663.48 and Walker to $9,313.48. The excess over $8,333.33 (one third of $25,000) in each case ($1,330.15 as to Johnson and $980.15 as to Walker) was accounted for by adjustments because of overdrawings by Kennedy and items received by Kennedy for the partnership and not accounted for, and by the apportionment of the value of the office furniture and equipment and sundry items, all subject to a deduction of one half of Kennedy's original capital contribution to the firm.

The master found that there was no agreement whereby Johnson and Walker undertook to share the cost of the defence of the action referred to in Kennedy's counterclaim.

He made the additional finding that since April 30, 1964, Kennedy has done business under the name of D. C. Kennedy Insurance Agency. Walker and Johnson are still in the insurance business. All three now have customers who formerly did business with the partnership. None of the partners now uses the name Triangle.

The case came before another judge for hearing on the two reports of the master. Kennedy moved to expunge both the finding that the dissolution was wrongful and the assessment of damages. The plaintiffs moved to confirm the reports. An interlocutory decree was entered expunging the finding of wrongful dissolution and the assessment of damages and confirming the reports as thus modified. The final decree adjudged that the dissolution was not wrongful and that the plaintiffs were not entitled to damages for breach of the agreement. Kennedy was ordered to pay Johnson $1,330.15 and to pay Walker $980.15. Johnson and Walker were ordered to convey all of their interest in the physical property of the partnership to Kennedy. The bill was dismissed as to the defendants Rockland Trust Company and Rockland Credit Union.

We consider the final decree. There was no error in the rulings that the dissolution of the partnership was not

wrongful and that the plaintiffs were not entitled to damages for breach of the agreement. Inasmuch as the oral agreement did not specify the life of the agency, the partnership was at the will of the partners. As G. L. c. 108A, § 31, provides, "Dissolution is caused: (1) Without violation of the agreement between the partners . . . (b) By the express will of any partner when no definite term or particular undertaking is specified." Thus, in a partnership of indefinite duration, any partner may lawfully dissolve the firm at any time. *Steele* v. *Estabrook,* 232 Mass. 432, 439. *Murray* v. *Bateman,* 315 Mass. 113, 115. The unexecuted agreement specifying a duration of twenty-five years did not affect the nature of the existing partnership. Because the firm was a partnership at will, Kennedy's termination of it, however unseemly in manner and method, was not a legal wrong. G. L. c. 108A, § 38 (1). When, as here, the dissolution was not wrongful, the partners are entitled to an equal share of the firm's assets. The master accounted for these assets. However, the master made a finding that the business at the time of dissolution had a fair market value of $25,000. We perceive no demonstrable basis on the record for this figure other than the wholly irrelevant considerations affecting the value of the partnership as a continuing enterprise, which it was not to be.

Our conclusion is that the final decree entered by the judge was correct in all particulars but two. It should have disposed of the defendant's counterclaim. *Bordonaro* v. *Vandenkerckhaven,* 322 Mass. 278, 281–282. In view of the master's adverse finding on that issue the decree should be modified by dismissing the counterclaim. It should also be modified by dismissing the bill as to the defendant Marjorie Kennedy. As thus modified it is affirmed.

*So ordered.*