Hand, J.
At the times relevant to this case, defendant-appellants Eric Yellin (‘Yellin’’) and James Firestone (“Firestone”) were shareholders and officers of Remodeling World, Inc. (“Remodeling World”), a home improvement enterprise based in Randolph. In August, 2002, having received a mailed advertisement from Remodeling World, plaintiff-appellees Sonya Shaw and David Shaw (“Shaws”) contacted the corporation about doing work on their Braintree home. Yellin, using the alias name “Eric Hall,” met with the Shaws at the Shaws’ home to discuss the project.[3] In the course of that meeting, and in subsequent discussions with the Shaws, Yellin and Firestone held themselves out as “partners,” despite Remodeling World’s incorporated status. Following the August meeting, the Shaws signed a written contract with Remodeling World for renovation of their home. The specified work included the installation of a specific type of vinyl siding and gutter guards.
The project did not go well. The Shaws were, from the outset, dissatisfied with the quality of the renovation work being done under the contract, and made repeated, but unheeded, requests that Remodeling World repair the defects caused by its shoddy workmanship. Without informing the Shaws or obtaining their approval, Remodeling World substituted an inferior type of vinyl siding for the siding specified in the Shaws’ contract, and charged the Shaws the contract price for the inferior materials. The inferior siding was obtained from Firestone’s supply company. Adding insult to injury, Remodeling World workers entered the Shaws’ home during the course of the project, and stole cash, jewelry, and Mrs. Shaw’s cancer medications. Finally, the Shaws became aware of the fact that Remodeling World was using *142 one license number for the work on their home, and a different number for the work on a home in another part of Braintree. Remodeling World ultimately abandoned the Shaws’ project before the renovation work was completed. The Shaws were required to hire another contractor to remedy defects in the work performed by Remodeling World and to complete the project.
In August, 2003, the Shaws made demand on Remodeling World under G.Lc. 93A. After receipt of that letter, Yellin and Firestone dissolved Remodeling World, Inc. They shortly thereafter opened another home improvement business, Direct Remodeling, Inc. In 2004, despite being on notice of the Shaws’ potential claims against them, Yellin and Firestone disposed of all of Remodeling World’s corporate records.
While Yellin and Firestone raise several issues on appeal, the focus of their appeal is the propriety of the trial court’s decision to allow the Shaws to recover against Yellin and Firestone, individually, for breach of contract, negligence, negligent supervision, misrepresentation, and/or violations of G.L.c. 142A and G.L.c. 93A Finding no error in these, or any of the trial court’s rulings presented on this appeal, we affirm them.
1. The defendants appeal the trial court’s denial of their motion to dismiss the Shaws’ claims against Yellin and Firestone, personally. While the appendix does not include a copy of the defendants’ dismissal motion,[4] the argument presented in Yellin and Firestone’s memorandum in support of their motion suggests that they sought dismissal of the Shaws’ complaint pursuant to Mass. R. Civ. R, Rule 12(b) (6). A Rule 12(b) (6) motion to dismiss may be allowed “if and only if ‘it appears to a certainty that [the nonmoving party] is entitled to no relief under any state of facts which could be proved in support of the claim.’ 2A Moore, Federal Practice 2245.” Reporters’ Notes to Mass. R. Civ. P., Rule 12. See In re Slavin, 449 Mass. 25, 28 (2007); Coraccio v. Lowell Five Cents Sav. Bank, 415 Mass. 145, 147 (1993) (“A court may grant the radical relief of dismissal only if the plaintiff can set forth no set of facts which would entitled her to relief.”). In deciding a Rule 12(b) (6) motion, the court must accept as true the complaint’s well-pleaded factual allegations and any reasonable inferences in the plaintiff’s favor that may be drawn from those allegations. See, e.g., Fairneny v. Savogran Co., 422 Mass. 469, 470 (1996). The court is “not to consider the unlikelihood of the plaintiff’s ability to produce evidence to support otherwise legally sufficient complaint allegations.” Brum v. Dartmouth, 44 Mass. App. Ct. 318, 322 (1998), citing Mmoe v. Commonwealth, 393 Mass. 617, 619-620 (1985).
The court denied the defendants’ dismissal motion in this case on two bases: first, on a theory of piercing the corporate veil; and second, on the ground that Yellin and Firestone participated personally in tortious conduct while acting in their capacities as corporate officers. There was no error in the denial of the dismissal motion.
It is a basic principle of common law that, ordinarily, corporations are regarded as separate from one another, and as separate from their stockholders. See, e.g., *143 Scott v. NG US 1, Inc., 450 Mass. 760, 766 (2008), citing Attorney Gen. v. M.C.K., Inc., 432 Mass. 546, 555 (2000); My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 618 (1968). This presumed separation of identities between corporation and stockholder is commonly termed the “corporate veil,” and, generally, insulates a corporation’s stockholders from personal liability for the corporation’s torts. See Scott, supra; My Bread Baking Co., supra.[5]
In determining whether the insulating protections of the corporate form should be disregarded in a given case, we consider the following factors:
(1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate record; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation’s funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.
M.C.K., Inc., supra at 555 n.19, citing Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 1416 (1st Cir. 1985). This set of factors serves as an analytical tool, not a mere checklist. ‘The exercise of comparing the facts of a case against these factors is, of course, not one in counting. One examines the twelve factors to form an opinion whether the [corporation’s] over-all structure and operation misleads.” Evans v. Wilton Constr. Corp., 30 Mass. App. Ct. 728, 736 (1991). Taking the allegations in the Shaws’ complaint as true, and measuring them against the twelve factors listed in Attorney Gen. v. M.C.K., Inc., we hold that the motion judge was well within his discretion in concluding that the Shaws had met their burden of showing that they had a viable claim against Yellin and Firestone based on Yellin’s and Firestone’s improper use of Remodeling World to defraud the Shaws. On that basis, the judge’s denial of the defendants’ motion to dismiss was proper.
Second, even if the Shaws’ complaint had failed to set forth a sufficient basis for denial of the defendants’ dismissal motion on a theory of piercing the corporate veil, the individual defendants’ Rule 12(6) (6) motion would properly have been denied based on the Shaws’ allegations of Yellin’s and Firestone’s tortious conduct in their individual capacities as corporate officers. A corporate officer may be held liable for the torts of a corporation if the officer himself participated in the tortious activity. RayTek Servs. v. Parker, 64 Mass. App. Ct. 165, 177 (2005). See Townsends, Inc. v. Beaupre, 47 Mass. App. Ct. 747, 751 (1999).
The Shaws’ complaint alleged that the individual defendants, while acting in their capacity as corporate officials, engaged in misrepresentation and violations *144 of G.L.c. 93A and G.L.c. 142A. In support of these claims, the Shaws alleged, inter alia, that Yellin and Firestone: used false names in their dealings with them; intentionally used a false contractor’s license number; held themselves out to the Shaws as partners; shut down Remodeling World’s offices in an effort to defraud customers having claims against the business; and, after contracting to provide specific materials and services to the Shaws, and without notice to or approval by the Shaws, substituted other materials and failed to provide the contracted-for services. Taking those allegations as true, as it was required to do, the trial court was justified in denying the individual defendants’ motion to dismiss based on the Shaws’ claims that Yellin and Firestone personally engaged in tortious conduct while acting as corporate officials. See Marshall v. Stratus Pharms., Inc., 51 Mass. App. Ct. 667, 677 (2001) (corporate officer personally liable for conduct violating G.L.c. 93A); Standard Register Co. v. Bolton-Emerson, Inc., 38 Mass. App. Ct. 545, 551 (1995) (same, corporate officer’s intentional misrepresentations).
2. Yellin and Firestone object to the trial court’s ruling on the Shaws’ motion in limine to pierce Remodeling World’s corporate veil at trial. As an initial matter, neither the parties’ briefs, nor the record appendices filed with them, demonstrate that Yellin and Firestone have preserved their appellate rights with respect to the trial court’s ruling on this motion. To preserve the issue for appeal, a party objecting to the court’s ruling on a motion in limine must make an objection at trial to the evidence admitted or precluded as a result of the court’s ruling on the motion. See, e.g., Ducharme v. Hyundai Motor America, 45 Mass. App. Ct. 401, 409 n.8 (1998). There is no evidence before us that the individual defendants made any objection at trial to the evidence relevant to piercing the corporate veil that was allowed by the trial judge.
Even assuming, however, that Yellin and Firestone properly preserved their rights to appeal the trial court’s allowance of the Shaws’ motion in limine, the ruling was one well within the judge’s discretion. After a hearing on the individual defendants’ motion to dismiss, the judge found that Remodeling World “destroyed its corporate records after it had been placed on notice that a potential claim against it existed.” The doctrine of spoliation recognizes that litigants have a duty to preserve evidence, and gives judges in civil cases discretion to impose sanctions for a party’s failure to do so. See Keene v. Brigham & Women’s Hosp., Inc., 439 Mass. 223, 235 (2003). ‘The doctrine is based on the premise that a party who has negligently or intentionally lost or destroyed evidence known to be relevant for an upcoming legal proceeding should be held accountable for any unfair prejudice that results.” Id. at 234. Although judges must endeavor to impose the least severe sanction needed to remedy the prejudice created by the spoliation, judges have broad discretion in fashioning that remedy.[6] Id. at 235. In this case, the judge con *145 ducted a hearing and was presented with information that, despite being on notice of the Shaws’ potential claim against the corporation, Yellin and Firestone destroyed all relevant corporate documents. The court also had before it evidence of the defendants’ refusal to provide discovery directed toward resolving the corporate veil issue. Under the circumstances, the court properly concluded that “the defendants engaged in particularly egregious conduct with the specific intent to obstruct the plaintiffs’ attempts to pursue litigation against them,” and that stripping Yellin and Firestone of their corporate insulation was required to “prevent gross inequity.” There was no error in the court’s allowing the Shaws to pursue Yellin and Firestone in their individual capacities.
3. Yellin and Firestone next argue that the Shaws failed to offer sufficient evidence to demonstrate (1) that Yellin and Firestone were personally liable to them, (2) the amount of the Shaws’ damages, or (3) the Shaws’ entitlement to multiple damages under G.L.c. 93A. As the record on appeal does not indicate that Yellin or Firestone preserved these issues for appeal by moving for directed verdict at the close of the Shaws’ case, we do not address the sufficiency of the evidence presented. See Martin v. Hall, 369 Mass. 882, 884 (1976) (appellate court cannot review the evidence in the absence of an effective motion for a directed verdict).
4. Yellin and Firestone’s final argument, that certain photographs depicting Remodeling World’s signs posted outside the Shaws’ home and another home in Braintree were admitted without proper foundation, is not persuasive. ‘To be admissible in evidence, a photograph must be shown to be accurate and bear enough similarity to circumstances at the time in dispute to be relevant and helpful to the jury in its deliberations.” Henderson v. D’Annolfo, 15 Mass. App. Ct. 413, 428 (1983). The admission of photographic evidence is a matter of discretion with the trial judge; that decision will not be reversed unless “plainly wrong.” Horowitz v. Bokron, 337 Mass. 739, 742 (1958), citing, inter alia, Everson v. Casualty Co. of America, 208 Mass. 214, 219-220 (1911). Here, David Shaw testified that he took the photographs in October or November, 2003, and that the photographs fairly and accurately represented the signs as they appeared at the time the photographs were taken. Further, Shaw identified the names of the streets on which the signs were posted.[7] Shaw’s testimony provided a proper foundation for the admission of the photographs; his inability to recall the precise street address at which a given photograph was taken went to the weight of that evidence, not to its admissibility.
Yellin and Firestone’s argument that the photographs should have been excluded because they were more prejudicial than probative is likewise unavailing. The balancing of the potential prejudice of a particular piece of evidence against its probative value to the fact finder is within the trial judge’s discretion, and will not be overturned in the absence of “palpable error.” Carrel v. National Cord & Braid Corp., 447 Mass. 431, 446 (2006). In this case, the photographs depicting a license number used by Remodeling World was probative of the Shaws’ claims under G.L.C. 142A, and was *146 also relevant to the issue of Yellin’s and Firestone’s credibility- Although the disputed photographs may have been damaging to Yellin and Firestone as a result, there is nothing so inherently or improperly inflammatory about them that would have required their exclusion as a means of protecting against prejudicial unfairness or confusion. See M.S. BRODIN & M. AVERY, MASSACHUSETTS EVIDENCE §4.3.2, at 127 (8th ed. 2007). There was no error in their admission into evidence at trial.
Judgments affirmed.

 Firestone also used an alias, “James Hall,” in his dealings with the Shaws.

 Although the appendix does not include a copy of Yellin and Firestone’s motion to dismiss, it does include a copy of their memorandum of law in support of that motion.

 Under certain limited circumstances, however, including situations in which the corporate form and its protections are being used to accomplish wrongful goals, like fraud, the courts will disregard the corporate form. See Scott, supra. In those cases, courts are permitted to use their equitable power to strip the corporate protections from individual shareholders, both as a sanction for the wrongdoing and as a deterrent to future misconduct. See M.C.K., Inc., supra.

 Sanctions for spoliation include exclusion of evidence, admission of evidence of the circumstances under which the spoliation occurred, Gath v. AVA-Com, Inc., 440 Mass. 482, 488 (2003); instruction to the jury on its ability to draw a negative inference from the spoliation of the evidence, id:, and, in cases of intentional spoliation of evidence, the imposition of default judgment or dismissal. See Keene, supra at 235-236, citing Gos v. Brownstein, 403 Mass. 252, 257 (1988).

 Shaw identified one sign as having been posted in front of his own home, and the other as having been posted in front of a home on Elm Street in Braintree. Shaw could not accurately recall the house number of the Elm Street posting.