Hand, J.
This matter arises out of a series of business-related transactions between plaintiff Allan Shade (“Shade”) and defendant Athena Equipment & Supply, Inc. (“Athena Equipment”), a closely held corporation. After relations between these parties had soured, Shade brought this suit against Athena Equipment, and against two of its officers, Anthony Balzarino and Paul Balzarino (collectively, “Balzarinos”), on theories of breach of contract, indemnification, and violations of G.L.c. 93A §11. Athena Equipment filed no answer to Shade’s complaint, and was defaulted before trial. After a jury-waived trial, the court determined that the Balzarinos were not entitled to the protections of Athena Equipment’s corporate form, pierced the corporate veil, and found the Balzarinos individually liable on each of the three theories on which the case had been tried. The court awarded Shade damages, interest, and *69 attorney’s fees, totaling $26,371.68.
The Balzarinos now appeal the denial of their motion for a “directed verdict”[3] the denial of certain of their requests for rulings of law, and the propriety of the courf s damages award. After consideration of the record and the arguments of counsel, we affirm the court’s findings against the Balzarinos on all three counts of Shade’s complaint, but return the case to the trial court for a new hearing for the assessment of damages and attorney’s fees.
1. The Balzarinos’ Mass. R. Civ. R, Rule 41(b) (2), motion for involuntary dismissal sought a ruling as to the insufficiency of Shade’s evidence. As with a directed verdict motion, the standard of review of a Rule 41(6) (2) motion is whether “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.” Sonogram of New England, Inc. v. Metropolitan Prop. & Cas. Ins. Co., 2002 Mass. App. Div. 68, 70-71, quoting Raunda v. Hertz Corp., 361 Mass. 341, 343 (1972). We summarize the evidence in the light most favorable to the plaintiff. Medford Co-op. Bank v. Skerry, 2004 Mass. App. Div. 120.
In May, 2002, Shade operated Athena Carpet & Upholstery Cleaners (“Athena Carpet”), a business specializing in carpet cleaning. Anthony Balzarino and Paul Balzarino (individually, “Anthony” and “Paul”) were, respectively, treasurer and vice-president of Athena Equipment, a cleaning-supplies provider. The third officer of the corporation was Alfred Olsen (“Olsen”), Athena Equipment’s president.[4]
On May 24, 2002, Shade and Athena Equipment entered into a written Asset Purchase Agreement (“Purchase Agreement”). Under the terms of the Purchase Agreement, Athena Equipment bought all of the assets of Athena Carpet, and assumed certain of Athena Carpet’s existing debts. Shortly thereafter, on June 17, 2002, Athena Equipment executed a promissory note to Shade in connection with its purchase of Athena Carpet.
For nearly two years, Athena Equipment fulfilled its obligations to Shade. On February 6, 2004, Shade acknowledged Athena Equipment’s payment in full of the promissory note and provided to Athena Equipment a written general release with respect to claims arising out of the sale of Athena Carpet to Athena Equipment. Several days later, on February 19,2004, Shade and Athena Equipment entered into another written agreement “to clarify outstanding obligations related to the [Purchase Agreement].” The terms of this agreement (‘Textron Agreement”) included Shade’s agreement to pay certain debts that, under the Purchase Agreement, Athena Equipment had agreed to pay; for its part, Athena Equipment agreed to assume a $30,000.00 debt to a company named Textron that remained in Shade’s name, and to indemnify Shade in connection with the debt:
*70 ATHENA shall be responsible for payment of the approximate amount of $30,000 owed to Textron and shall make every effort to have this account converted to its own name. Further, ATHENA shall hold SHADE harmless from any and all actions by Textron for the collection of this debt including but not limited to legal fees and costs.
At the time the parties signed the Textron Agreement, the Textron debt was current For some period of time after the execution of the Textron Agreement Athena Equipment continued to make payments on the Textron debt. It did not, however, convert the debt to its own name, as called for under the terms of the Textron Agreement.
In the year following the execution of the Textron Agreement, Athena Equipment's fortunes, and those of other corporations controlled by the Balzarinos, deteriorated. On May 16, 2005, with suppliers unwilling to extend credit, and debts mounting, Athena Equipment obtained from Middlesex Savings Bank secured notes and revolving lines of credit. These notes and credit lines were personally guaranteed by Anthony, Paul, and On Call Cleaning Corp. (“On Call”), another business controlled by the Balzarinos. These efforts at shoring up Athena Equipment’s finances did not, however, succeed. The Balzarinos and Olsen fell out; despite Olsen’s position as an officer of both Athena Equipment and On Call, and his one-third interest in those corporations, the Balzarinos ousted Olsen from both corporations on July 7,2006. In doing so, they failed to comply with the notice requirements for the shareholder meeting during which Olsen was removed from office.[5]
Following Olsen’s removal from his corporate position, Anthony assumed management of the corporate finances of Athena Equipment, On Call, and a third entity, Janiclean. Anthony set up a personal bank account, d/b/a Athena Equipment, Athena Carpet, and On Call, into which the Balzarinos intermingled the corporate funds of those and other businesses under their control. Athena Carpet went into receivership. Before it did, the Balzarinos made certain payments according to their own system of prioritization. Although they continued to pay for expenses related to Anthony’s company car and on debts for which they had given personal guaranties, they stopped payment on the Textron debt. Further, despite the terms of the Textron Agreement, the Balzarinos never converted that debt into the name of Athena Equipment. Textron put the debt into collection against Shade, and Shade incurred expenses as a result.
The motion for involuntary dismissal included a number of separate theories. First, the Balzarinos argue that, in the absence of a contract between either of them, individually, and Shade, neither of them may be held liable for breach of contract or on an indemnification theory. The court’s imposition of personal liability on each of the Balzarinos turns on the court’s decision to “pierce the corporate veil,” putting aside the corporate fiction to prevent an unjust result. The court acted properly in denying the involuntary dismissal motion on this issue.
*71 As the Balzarinos correctly argue, it is a basic principle of common law that, ordinarily, corporations are regarded as separate from one another, and as separate from their stockholders. See, e.g., Scott v. NG US 1, Inc., 450 Mass. 760, 766 (2008), citing Attorney Gen. v. M.C.K., Inc., 432 Mass. 546, 555 (2000), and My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 618 (1968). This presumed separation of identities between corporation and stockholder is commonly termed the “corporate veil,” which, generally, insulates a corporation’s stockholders from personal liability for the corporation’s torts. See id.; My Bread Baking Co., supra.[6]
In determining whether the insulating protections of the corporate form should be disregarded in a given case, a court will consider the following factors: (1) common ownership; (2) pervasive control; (3) confused intermingling of business activity assets or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) nonpayment of dividends; (8) Solvency at the time of the litigated transaction; (9) siphoning away of corporate assets by dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud. Attorney Gen. v. M.C.K., Inc., supra at 555 n.19; Strong v. Hegarty, 1996 Mass. App. Div. 92, 93 (1996), citing Pepa Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 14-16 (1st Cir. 1985). This set of factors is an analytical tool, not a mere checklist. “[T]he exercise [of comparing the facts of a case against these factors] is, of course, not one in counting. One examines the twelve factors to form an opinion whether the [corporation’s] over-all structure and operation misleads.” Evans v. Multicon Constr. Corp., 30 Mass. App. Ct. 728, 736 (1991). Viewing the facts in the light most favorable to Shade, we find the trial court to have been well within its discretion in looking behind Athena Equipment's corporate identity in imposing liability.[7] The Balzarinos owned and exercised pervasive — *72 and, after Olsen’s dismissal, complete — control over Athena Equipment and On Call. They concede that they made no distinctions among the finances of their corporations, and ran them “as one corporation.” There is little evidence of the businesses’ capitalization, but what evidence there is suggests that, even with their finances completely integrated, none of the Balzarinos’ corporations could support themselves independently. At least with respect to Athena Equipment, the Balzarinos disregarded the formalities governing record-keeping, financial independence, and shareholders’ meetings. While the officers appeared to work for the corporations, they did not perform their designated offices: Anthony, Athena Equipment’s treasurer, testified that he had no involvement with the finances until after Olsen’s ouster. Lastly, the Balzarinos’ prioritization of debts and obligations was designed to benefit themselves, personally; as Athena Equipment foundered financially, the Balzarinos paid personal expenses and repaid those loans that they had personally guaranteed, while failing to convert into Athena Equipment’s name, or to pay, the Textron debt. The trial court acted properly in piercing the corporate veil and in imposing liability on the Balzarinos, individually, for breach of contract and for indemnification.
The general release executed in February, 2004 does not bar Shade’s claims with respect to the later Textron Agreement. Although the terms of the general release would have precluded Shade’s recovery on breach of contract claims “resulting or to result from the sale of [Athena Carpet],” Athena Equipment’s obligation to assume in its own name and pay the Textron debt resulted from a later, separate contract between Shade and Athena Equipment. That agreement, supported by independent consideration, imposed obligations that did not exist at the time of the signing of the general release; there is no evidence in the record to suggest that the parties intended the general release to address the obligations created under the Textron Agreement. The terms of the general release do not preclude enforcement of the terms of the Textron Agreement. See Pierce v. Parker, 4 Met. 80, 87 (1842) (general release may bar future claims to extent that parties intended, at time general release was made, that release do so).
Reviewing the record carefully, we find that the trial court was justified in denying Balzarinos’ Rule 41(b) (2) motion on Shade’s c. 93A claims. Section 11 of G.L.c. 93A provides a cause of action for people engaged in business who suffer a loss as a result of the unfair and deceptive practices employed by another business. To sustain an action under §11, a plaintiff must show that the defendant engaged in unfair and deceptive practices, and that the use of such practices benefitted the defendant. Unfair and deceptive practices are prohibited under G.L.c. 93A, §2; under that section, a practice or act is “unfair” “if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people.” Morrison v. Toys “R” Us, Inc., 441 Mass. 451, 457 (2004), quoting Hdler Fin. v. Insurance Co. of N. America, 410 Mass. 400, 408 (1991). While even a knowing breach of contract does not ordinarily give rise to a claim under c. 93A, Ahern v. Scholz, 85 F.3d 774, 798 (1st Cir. 1996), “conduct ‘in disregard of known contractual arrangements’ and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes.” Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474 (1991), quoting Wang Labs., Inc. v. Budness Incentives, Inc., 398 *73 Mass. 854, 857 (1986). Here, the Balzarinos’ failure to convert the Textron debt from Shade’s name to its own, and its failure to prioritize payment of that debt equally with payment of debts for which Anthony, Paul, or both were personally liable, or for which the other Balzarino-controlled corporations were liable, represented the type of self-interested conduct targeted by §11. Viewed in the light most favorable to the plaintiff, these actions by Athena Equipment and the Balzarinos were contractual breaches intended to benefit the defendants by limiting their personal exposure, while leaving Shade vulnerable to collection on the Textron debt. As that conduct could provide a basis for recovery under c. 93A, §11, involuntary dismissal on that count was properly denied.
The defendants’ reliance on the business judgment rule to insulate them from liability in this case is misplaced. The rule, set forth in G.L.c. 156B, §65,[8] requires *74 a corporate officer to perform his or her duties “in good faith and in a manner he reasonably believes to be in the best interests of the corporation.” The statute further provides that a corporate officer’s lack of negligence, coupled with compliance with the remainder of the statute, “shall be a complete defense to any claim asserted against him ... by reason of his being or having been a director, officer or incorporator of the corporation.” Id. Viewing the evidence in the light most favorable to the plaintiff, we conclude that the court was justified in determining that the defendants’ conduct was not excused by the business judgment rule: Athena Equipment’s and the Balzarinos’ failure to follow through on their agreement to assume and to pay the Textron debt was, at a minimum, negligent; and there is a strong inference to be drawn that it was a breach of good faith. Applying the relevant standard, we hold that the involuntary dismissal motion was properly denied as to the defendants’ entitlement to the protections of the business judgment rule.
To the extent that the defendants requested involuntary dismissal on the issue of damages,[9] the court’s memorandum of decision indicates that at trial, the court was presented with evidence that “Shade has been made to suffer collection proceedings and has been required to hire counsel to assist him in responding to the collections proceedings and to assist him in this case to require the defendants to honor their obligations to make payments on the debt owed to Textron.” The appendix also includes redacted copies of Shade’s legal bills. On this evidence, we find that any request for involuntary dismissal on the issue of whether Shade incurred damages related to the defendants’ conduct was properly denied.
2. The defendants next appeal the court’s denial of the first twelve of their requests for rulings of law. The disputed requests for rulings improperly presented mixed questions of fact and law or, in the case of request number 9, a pure question of fact. As these requests did not comply with the requirements of Mass. R. Civ. E, Rule 64A the trial court was not obligated to act on them. See Liberatore v. Framingham, 315 Mass. 538, 543-544 (1944); Crowninshield Shipbuilding Co. v. Jackman, 283 Mass. 21, 23 (1933) (same). Request number 8[10] failed to set forth a correct proposition of law[11] and was properly denied.
3. Finally, the Balzarinos contest the findings against them and in favor of Shade. For the reasons outlined above, we affirm the trial court’s findings against the defendants on each count. In light of our affirmation of the court’s finding on the G.L.c. 93A, §11 count, we also affirm the propriety of awarding attorney’s fees. With *75 respect to the issue of damages, however, we note the court’s allowance of request for ruling number 13, i.e., “[hjere the plaintiff has not presented any evidence of what is due and owing on the claimed Textron debt and the court may not speculate as to damages.” Neither the court’s memorandum of decision, nor anything in the record before us, indicates the basis for the amount of the damages awarded. Further, the record is also devoid of anything that would permit consideration of reasonableness of the $18,396.00 awarded in attorney’s fees. Accordingly, a new hearing for the assessment of damages is required.
Accordingly, the trial court’s judgment is vacated, and this case is returned to the trial court for a new hearing on the issue of the damages and attorney’s fees to be assessed against the defendants and for the entry of a judgment for the plaintiff for the amounts assessed.
So ordered.

 Although captioned as one for a “directed verdict,” the Balzarinos’ motion in this jury-waived trial was one for involuntary dismissal pursuant to Mass. R. Civ. P, Rule 41(b)(2). Avalon Oaks v. King, 2007 Mass. App. Div. 174, 174-175; Smith v. Baystate Towing, Inc., 2003 Mass. App. Div. 104 n.1.

 At all times relevant to this action, Anthony and Paul were also officers of other businesses, including On Call Cleaning Corp. and Janiclean. Until mid-2006, Olsen was an officer of both Athena Equipment and On Call.

 The Balzarinos do not dispute that at all relevant times, they maintained very little, if any, distinctions between their businesses; their testimony is, in fact, explicit that they treated the various enterprises as “one corporation.” Athena Equipment and On Call shared office space, a single computer for corporate record-keeping, a number of employees, and lists of suppliers and customers.

 In situations in which the corporate form and its protections are being used to accomplish wrongful goals, like fraud, or where retention of the corporate protections will result in injustice, courts may disregard the corporate form. See Scott, supra at 766. In such cases, courts are permitted to use their equitable power to strip the corporate protections from individual shareholders, both as a sanction for the wrongdoing, and as a deterrent to future misconduct. See Attorney Gen. v. M.C.K., Inc., supra at 555.

 The appellants’ argument that veñ-piercing applies only to situations in which a claimant seeks to impose joint liability on multiple corporations, and not to a claimant’s efforts to impose liability on the individuals behind the corporations, is unavailing. “Ignoring the corporate form, or piercing the corporate veil, is an equitable tool that ignores the distinction between shareholders and their corporation in order to prevent injustice or fraud. Considering whether a corporation has been formed or managed contrary to public policy or for fraudulent reasons, which would allow the imposition of personal liability on shareholders is a fact specific question....” Can-Am Drilling & Blasting Co. Inc. v. Intercoastal Dev. Corp., 1996 Mass. App. Div. 14, 16 n.3 (quoting trial judge approvingly). It is well settled that an individual corporate officer or shareholder may be personally liable for corporate actions in cases, like this one, where the individual operated the corporation for personal benefit, and where a Mure to look beyond corporate formalities would lead to an unjust result See Pepsi Cola Metro Bottling Co., supra at 16 (shareholders who ran corporation for personal benefit individually liable under veil-piercing argument).

 The statute provides as follows:
A director, officer or incorporator of a corporation shall perform his duties as such, including, in the case of a director, his duties as a member of a committee of the board upon which he may serve, in good faith and in a manner he reasonably believes to be in the best interests of the corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. In determining what he reasonably believes to be in the best interests of the corporation, a director may consider the interests of the corporation’s employees, suppliers, creditors and customers, the economy of the state, region and nation, community and societal considerations, and the long-term and short-term interests of the corporation and its stockholders, including the possibility that these interests may be best served by the continued independence of the corporation. In performing his duties, a director, officer or incorporator shall be entitled to rely on information, opinions, reports or records, including financial statements, books of account and other financial records, in each case presented by or prepared by or under the supervision of (1) one or more officers or employees of the corporation whom the director, officer or incorporator reasonably believes to be reliable and competent in the matters presented, or (2) counsel, public accountants or other persons as to matters which the director, officer or incorporator reasonably believes to be within such person’s professional or expert competence, or (3) in the case of a director, a duly constituted committee of the board upon which he does not serve, as to matters within its delegated authority, which committee the director reasonably believes to merit confidence, but he shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance to be unwarranted. The fact that a director, officer or incorporator so performed his duties shall be a complete defense to any claim asserted against him, whether under sections sixty to sixty-four, inclusive, or otherwise, expect [sic] as expressly provided by statute, by reason of his being or having been a director, officer or incorporator of the corporation.
G.L.c. 156B, §65.

 Although both parties have briefed this issue, we have been unable to find a copy of a written motion, or reference in the excerpted trial transcript, of any request for a “directed verdict” on the issue of damages.

 To fall within a class of conduct prohibited by Section 11 of 93A, the breach must be intended to place the breaching party in an advantageous position by extorting concessions from the non-breaching party. Massachusetts Employers Ins. Exch. V [sic] Propac-Mass, Inc., 420 Mass. 39, 43 (1995) [.] And, in the absence of extortionate qualities, the failure to perform contractual obligations does not invoke 93A. Atkinson v. Rosenthal, 33 Mass. App. Ct. 219, 226 (1992).
[RULING:] DENIED.

 In Massachusetts Employers Ins. Exch. v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995), the Supreme Judicial Court stated that a party’s breach of a contract intended to place the breaching party in an advantageous position by extorting concessions from the nonbreaching party may be a breach of G.L.c. 93A, §11, but did not indicate, as the request for ruling does, that that is the onlyway in which a contractual breach may be a violation of §11. While Atkinson v. Rosenthal, 33 Mass. App. Ct. 219, 226 (1992) does stand for the proposition cited, it does so in the context of a lease, not an assumption of debt, and so is not on point in this case.