Williams, PJ.
The defendant, Christopher Colahan (“Colahan”), d/b/a Chris’s Towing Service, has appealed following a judgment against him personally, as a stockholder and officer, for the disposal of a car owned by the plaintiff, Tommy J. Gordineer (“Gordineer”). Colahan claims that the acts Gordineer complains of were done, if at all, by a corporation called Chris’ Service Center, Inc. (“CSC”). We conclude that the evidence regarding CSC was insufficient to pierce the corporate veil of CSC so as to find Colahan personally liable, particularly given the procedural history of this case, in which CSC was not a defendant despite efforts by both parties to make it so. We reverse the judgment against Colahan, and order judgment entered in his favor.
In 2009, Gordineer filed a small claims action in the Falmouth District Court against “Christopher Colahan d/b/a Chris’s Towing Service” to recover the value of his 1991 Ford Explorer. Gordineer alleged that the car had been towed and stored, and later sold for salvage, by Colahan in 2007. Upon Colahan’s motion, the action was transferred first to the regular civil docket, G.L.c. 218, §24, and then to the Wrentham District Court. Trial was scheduled for July, 2010. Four days before trial, Colahan filed a Mass. R. Civ. R, Rule 12(b) (8) motion to dismiss the action for misnomer of party, arguing that CSC was the proper defendant, not Colahan individually or the nonexistent “Chris’s Towing Service.” The trial court denied that motion. Trial was then set for September, 2010. Also in July, Gordineer moved to amend his action to add ‘“Chris’s Service Center, Inc.’ d/b/a Walpole Auto Sales’” as a defendant. No action was taken on that motion.
Thus, whether CSC was a defendant was an issue still unresolved at trial, but discussed then at some length. Despite Gordineer’s assertions that he had amended his claim to include CSC, the trial court rightly remained skeptical of that because the court had explicitly endorsed his motion to add CSC with “no action taken.” Gordineer told the court he had a mail receipt, which he could produce later, demonstrating that CSC was a party. The court declared the question “pretty important,” and emphasized that if CSC existed, “it’s a separate legal corporation” on which service was required to have been made. The court also distinguished “sending” and *152 “service,” and noted that had service been made, the corporation would have to be represented by counsel, because if it were not, it “would lose.” Without resolving the issue, the trial court commenced the trial, stating that it would decide later “whether or not [CSC] is properly a party.”
At the close of trial, the court again raised the issue of the receipt that Gordineer said he had, evidencing, in the court’s characterization, that “Chris’ Service Center, Inc. accepted ... mail in this case.” Gordineer was given a week after trial to file a copy of it. Although the court noted in its decision that “Gordineer filed a copy of a certified mail receipt for a copy of his pleadings he sent to and which was accepted by ‘Chris’ Service Center Inc.,’ and apparently relied to some extent upon that card to “find that Gordineer did properly bring the corporation into this case,” (essentially equating that mailing with service under Mass. R. Civ. R, Rule 4), no such receipt appears in the record. That Gordineer started to use the CSC name in his filings and, perhaps, sent mail to CSC that was accepted does not make CSC a defendant in the case, even if the case began as a small claims action. Even Gordineer did not think CSC was in the case because he moved in late July to add it as a defendant. For this trial between two pro se parties to proceed without having established whether CSC was a party, which would have to be represented by counsel, provided fertile ground for confusion, which blossomed when the court in its decision pierced the corporate veil of CSC.
The evidence was insufficient to support a conclusion that the corporate protection presumptively afforded CSC could be pierced so as to reach Colahan.[3] See Shade v. Athena Equip. & Supply, Inc., 2010 Mass. App. Div. 68, 71, citing Scott v. NG U.S. 1, Inc., 450 Mass. 760, 766 (2008) (“[Presumed separation of identities between corporation and stockholder is commonly termed the ‘corporate veil.’”). Massachusetts courts will pierce a corporate veil only in “rare particular situations.”[4] Scott, supra at 767, quoting My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 620 (1968). See also Rivera v. Club Caravan, Inc., 77 Mass. App. Ct. 17, 23 (2010); Merrimack Valley Regional Transit Auth. v. Wood Mill Parking, LLC, No: 10-P-235 (Mass. App. Ct. Feb. 11, 2011) (unpublished Rule 1:28 decision). When “the corporate form and its protections are being used to accomplish wrongful goals, like *153 fraud, or where retention of the corporate protections will result in injustice, courts may disregard the corporate form.” Shade, supra at 71 n.6, citing Scott, supra at 766. Corporate formalities may be ignored only
when (1) there is active and pervasive control of related business entities by the same controlling persons and there is a fraudulent or injurious consequence by reason of the relationship among those business entities; or (2) there is “a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.”
Evans v. Multicon Constr. Corp., 30 Mass. App. Ct. 728, 732-733 (1991), quoting My Bread Baking Co., supra at 619. Confronted with the issue of potential veil piercing, the court must evaluate twelve factors.[5] That evaluation is not an exercise in counting, but a judge must “examine!] the twelve factors to form an opinion whether the over-all structure and operation misleads" (emphasis added). Id. at 736. And the corporate formalities may be ignored only if there exists “an element of dubious manipulation and contrivance, finagling, such that corporate identities are confused and third parties cannot be quite certain with what they are dealing.” Id.
Trial evidence about CSC was simply too skimpy to justify setting aside the presumptive protections it should have enjoyed.[6] Gordineer testified that the truck that towed his Explorer had “Chris’ Towing” displayed on its side but was unsure whether the words “Service” or “Inc.” also appeared. He had seen no signage at the place of business, 1675 Main Street, Walpole. Gordineer had never met Colahan, and *154 neither he, nor Mrs. Gordineer, knew with whom they had spoken during telephone calls to the business.
To the extent there was substantive evidence about CSC, most came from Stephanie Kinahan (“Kinahan”), CSC’s office manager, who had worked for CSC for nine years (and whom the trial court expressly found “credible”). She testified that CSC had been a corporation since 1983, and that the town of Walpole business license was in the name of Chris’ Service Center, Inc., d/b/a Walpole Auto Sales. (‘Walpole Auto Sales” is next door to the building in which she works). The town of Walpole business licenses in evidence confirmed that testimony. Trucks display the name “Chris’s Service Center, Inc.,” and there are two “pretty old” signs at the business, on the building and in the parking lot.[7] That corporate name appears on Kinahan’s paychecks. The manager at CSC in 2007 and until early 2010 was Norman Marchand, her father. Colahan, she testified, lives in Florida, and “rarely came up” during the time of the subject events.
In answer to questions from the court, Kinahan said that CSC was a stock corporation, owned solely by Colahan. She answered that she was not on the board, was not an officer, and specifically was not the secretary of CSC. All the pertinent documentary evidence introduced at trial — tow slips, receipts, and business licenses — bore the name “Chris’ Service Center, Inc.”
“Massachusetts law provides the benefits of the corporate form to properly incorporated and operated business entities, and the courts should be expected to disregard that form only after a thorough assessment.” Ray-Tek Servs., Inc. v. Parker, 64 Mass. App. Ct. 165, 177 (2005). In its decision, the trial court did not review the evidence regarding the status of CSC, or evaluate and make findings as to any of the twelve factors of the My Bread. Baking Co./Evans analysis (see note 5). See Ray-Tek Servs., Inc., supra at 176. Rather, the court concluded that although Colahan “control [s]” CSC, towing, car repair, car sales, and “salvage operations”[8] performed by different entities at the same address “really reflect one business totally owned by [Colahan] personally.” As a result, “there is such informality around the businesses at issue here that it would not be unjust to ‘pierce the corporate veil’ and impose [CSC’s] liability on Colahan, its sole owner.... For some time [Gordineer] dealt with Colahan and his employees without ever being told that there was a separate corporation with which he must deal.” And the court went on: “Having dealt with Gordineer on that informal basis ... the Colahan businesses must be held to that choice.” Although such rulings might be construed as a finding of “confused intermingling of business activities,” id., there is a dearth of facts in the record, and as found by the judge, that justify piercing the corporate veil of CSC. We are particularly unconvinced that the fact, standing alone, that Colahan was a sole stockholder was significant, see id., and we are even less convinced that whoever spoke to Gordineer *155 or his wife over the telephone was obliged to tell them “that there was a separate corporation with which [they] must deal.” Consumers often communicate with a business without being taught the details of its corporate structure.
The judgment in favor of Gordineer against Colahan is reversed and vacated, and judgment in favor of Colahan is to be entered.
So ordered.

 Another way by which corporate officers could face personal liability involves the imposition of liability on such an officer for the torts of a corporation if the officer personally participated in the tortious activity. Ray-Tek Servs., Inc. v. Parker, 64 Mass. App. Ct. 165, 177-178 (2005) -and cases cited. See also Shaw v. Yellin, 2008 Mass. App. Div. 141, 143. Although the trial court not only conjured “piercing the corporate veil” in its decision, but also discussed it at trial, that particular theory does not seem to be the one on which this case turned.

 The trial court summarized Gordineer’s position at trial in terms of “piercing the corporate veil”: “[Gordineer’s] argument is that there is just one big happy family over there and the fact that some of the time the family has an Inc. at the end of its name doesn’t prevent him from suing [Colahan] personally. There’s a doctrine in Massachusetts... called piercing the corporate veil, which stands for the proposition that if people run a business partially under a corporate name and partially out, they can’t use the corporate — they can’t escape, necessarily, personal liability.”

 The factors, discussed generally in My Bread Baking Co., supra at 619-620 and set forth as twelve numbered factors in Evans, supra at 733, citing Pepsi-Cola Metropolitan Bottling Co. v. Checkers, Inc., 754 F.2d 10, 14-16 (1st Cir. 1985), are: “(1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation’s funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.” Attorney Gen. v. M.C.K., Inc., 432 Mass. 546, 555 n.19 (2000). See also Rivera, supra at 22; Shaw, supra at 143.

 This is especially true since both parties, either directly or indirectly, unsuccessfully sought to add CSC as a defendant well before trial. As the court correctly remarked at trial, were CSC a party, it would have to have been represented by counsel. See Driscoll v. T.R. White Co., 441 Mass. 1009, 1010 (2004). See also G.L.c. 221, §46. He also remarked, if it were not so represented, it “would lose.” Presumably, had CSC been denominated a defendant before trial, it would have been represented at trial by counsel. But the trial proceeded with the issue of CSC’s status as a party in limbo.

 Although the trial judge indicated twice during the trial that he would take a view of the premises — the object of which would have to have been to view signage or its lack — his decision does not reflect whether he did so.

 The uncontroverted evidence was that the Explorer had been sold to a salvage company called Allied Recycling, and no evidence linked that business to Colahan or CSC in any way.