Welch, J.
After a bench trial, the court found for the plaintiff, Zophin and Keith, P.C. (“Zophin”), and awarded judgment in the amount of $17,021.00, plus interest *44 and costs, against the defendant, Moss M. Sidell (“Sidell”). Sidell appeals from the judgment. We affirm.
By way of background, the dispute between the parties concerned whether Sidell was responsible for the costs of accounting services undertaken by Zophin. At the time, Sidell was a partner in a law firm entitled Bowles, Sidell & Sykes, PA In early 2001, Sidell contacted Zophin to employ his services as an accountant in order to determine the value of his termination payment due under the stockholders agreement with his firm. Sidell and Zophin agreed on a billing rate, and Zophin proceeded to do all things necessary to conduct the stockholder evaluation. As a result of Sidell and his partners not coming to an agreement, the dispute proceeded to arbitration in Florida. The arbitration was captioned as Bowles, Sidell and Sykes, PA. v. Moss Sidell. Zophin met with Sidell, reviewed the relevant documents, flew to Florida, and testified at the arbitration hearing on behalf of Sidell. At no time did Sidell express any dissatisfaction with Zophin’s work. All communications in evaluating the partnership — whether by e-mail, correspondence, or in person — were between Sidell and Zophin. Prior to the arbitration, invoices were submitted by Zophin to Sidell and paid in full by checks written from the account of Bowles, Sidell & Sykes, P.C.[1]
After the arbitration had been concluded, Zophin continued to submit invoices to Sidell for work performed. Sidell made payments drawing from the account of his new firm, Sidell & Associates, P.C.[2] Sidell made no complaints regarding the content of the bills. In June, 2004, Sidell stopped making payments to Zophin, resulting in a balance owed of $17,021.50. Prior to the suspension of payments, Sidell and Zophin communicated regarding the outstanding debt In an e-mail, dated March 26,2004, Sidell stated to Zophin that his corporation, Sidell & Associates, P.C., had many obligations to satisfy other than Zophin’s and that his corporation had always made payments to Zophin when funds were available.[3] Notwithstanding acknowledging the debt owed to Zophin, Sidell stopped making payments, resulting in Zophin having to resort to litigation to collect the debt
On August 15,2007, a complaint was filed by Zophin against Sidell, alleging Sidell owed Zophin for accounting services in the amount of $17,021.00. Service was made upon Sidell on January 2,2008, which late service is one of the issues before us.[4] Both at the time of trial and on appeal, Sidell, an attorney licensed to practice law in the *45 Commonwealth of Massachusetts, has represented himself. The three-count complaint alleged services provided and unpaid for, payment due on account, and moneys owed for services rendered in quantum meruit. In response to being served with the complaint, Sidell filed a motion to dismiss pursuant to Mass. R. Civ. P., Rule 40, alleging untimely service. On March 21,2008, after hearing, the court denied Sidell’s motion to dismiss. After a bench trial before a different judge, judgment entered for Zophin. In his appeal, Sidell claims six errors.
1. Mass. R. Civ. R, Rule 40). Sidell asserts that as the complaint was filed on August 15, 2007 and he was not served until January 2, 2008, the complaint should have been dismissed. Rule 40 of the Mass. R. Civ. P. provides that if service of the summons and complaint is not made upon a defendant within ninety days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within the ninety days, the action shall be dismissed without prejudice.
Rule 40 is strictly construed, see Commissioner of Revenue v. Corrigan, 45 Mass. App. Ct. 309, 312 (1998), and does not merely permit, but mandates, dismissal if the plaintiff is unable to advance “good cause” for its failure to effect valid timely service. Id. at 311. The burden of proof is on the plaintiff to demonstrate the requisite “good cause” to avoid dismissal. Shuman v. Stanley Works, 30 Mass. App. Ct. 951, 953 (1991). The well-established definition of Rule 40 “good cause” is that it is a ‘“stringent standard requiring diligen [t] ’ albeit unsuccessful effort to complete service within the period prescribed by the rule.” Id., quoting Davis-Wilson v. Hilton Hotels Corp., 106 F.R.D. 505, 509 (E.D.La. 1985). “The only example of good cause provided by the legislative history is the obvious one of a defendant’s evasion of service.” Id., quoting Wei v. State, 763 F.2d 370, 371 (9th Cir. 1985). In assessing a plaintiff’s claim of good cause, the “focus of the court’s inquiry is the reasonableness and diligence of counsel’s effort to effect service within the time required.” Id. The question whether the plaintiff has demonstrated good cause is addressed to the court’s discretion. Maloney v. Maloney, 2004 Mass. App. Div. 189.
Due to Sidell’s listing multiple incorrect addresses in both Rhode Island and Massachusetts, there was understandable delay in effectuating service. The last known address for Sidell was 127 Crest Drive Cranston, Rhode Island, per the articles of incorporation for Sidell & Associates, P.C. Between September 5, 2007 and October 4, 2007, after several mail delivery attempts, the summons and complaint were returned to Zophin’s counsel as unclaimed and unable to forward. On October 12, 2007, counsel for Zophin forwarded the summons and complaint to the Rhode Island sheriff’s department for service. On October 17, 2007, the sheriff’s department determined that Sidell no longer resided in Cranston. Counsel’s review of the Massachusetts Board of Bar Overseers’ Web site showed that SideU’s business address was listed as 1005 Boylston Street, Suite 372, Newton, Massachusetts. On November 9, 2007, the summons and complaint were forwarded to the Middlesex County sheriff’s office, which discovered that the address was false and, in fact, the Boylston Street address was not a law office, but a UPS store with a mailbox number 372.[5] Notwithstanding Sidell’s shell game of addresses, the Middlesex County sher *46 iff s office was finally able to track down his residence in Rhode Island, and service was effectuated on January 2,2008. Based upon the incorrect addresses and Zophin’s due diligence, we conclude that Zophin established good cause for not serving Sidell within the ninety-day period and affirm the court’s denial of the motion to dismiss.
2. Judicial estoppel. Sidell asserts that prior to the present action against him individually, Zophin had filed suit against Sidell & Associates, P.C. and received a default judgment Sidell asserts that the judge erred in failing to find for him on the basis of judicial estoppel.
Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding. Morris v. J.J. Best & Co., 2008 Mass. App. Div. 233, 236. Judicial estoppel will normally be appropriate whenever “a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of legal advantage.” Otis v.Arbella Mut. Ins. Co., 443 Mass. 634, 641 (2005), quoting InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003). Allowing a party to seek advantage from taking “mutually exclusive” positions in different court proceedings would “create [] the appearance that either the first court has been misled or the second court will be misled, thus raising the specter of inconsistent determinations and endangering the integrity of the judicial process.” Id. at 639, 643, quoting Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004). The application of judicial estoppel requires both that the position being asserted be directly contrary to the position previously asserted and that the party succeeded in convincing the court to accept its prior position. Id. at 641. A judge’s application of judicial estoppel to a case is a matter of discretion, and we review for abuse of discretion. Id. at 640.
Zophin having filed a law suit against Sidell & Associates, P.C. would not preclude filing a suit individually against Sidell, and the trial court’s finding was not an abuse of discretion. Sidell & Associates, P.C., whose name was on a number of checks signed by Sidell, was a proper defendant in the collection case. Furthermore, the filing of the complaint resulting in a default judgment entered against Sidell & Associates, P.C. did not mislead the court. The only position advanced in the prior proceeding was that Sidell & Associates, P.C., with Sidell being the only named partner, was liable for the debt At no time was the position advanced by Zophin that Sidell was not individually responsible for the payment of the debt. Judicial estoppel was not applicable, and the court did not abuse its discretion.
3. Implied-in-fact contract. The trial court found an implied-in-fact contract between Zophin and Sidell, wherein Sidell retained Zophin to perform accounting services. An implied-in-fact contract is a “true contract,” 1 A. CORBIN, CONTRACTS §1.20, at 64 (rev. ed. 1993), that may be “found to exist from the conduct and relations of the parties.” LiDonni, Inc. v. Hart, 355 Mass. 580, 583 (1969).[6] “An implied contract requires proof that there was a benefit to the defendant, that the plaintiff expected the defendant to pay for that benefit, and that the defendant expected, or a reasonable *47 person should have expected, that he or she would have to pay for that benefit” Vita v. Berman, DeValerio & Pease, LLP, 81 Mass. App. Ct. 748, 754 (2012), quoting T.F. v. B.L., 442 Mass. 522, 527 (2004). See also Popponesset Beach As’n v. Marchillo, 39 Mass. App. Ct. 586, 592 (1996) (“[I]f a person knowingly receives services and other benefits, and there is no evidence that those services and benefits were being furnished gratuitously, the law implies a promise to pay the value of those services and benefits.”).[7]
The nature of the dispute for which Zophin was retained to render his expert accounting services concerned an individual stockholder, Sidell, seeking to sell his stock and dissolve his equity in his partnership. At all times, the work performed concerned Sidell’s individual interest in the corporation and not the corporate entity itself or the interest of the other partners. All meetings conducted were between Zophin and Sidell, including a trip to Florida where Zophin testified on behalf of Sidell against his partners. Sidell points to the initial checks coming from Bowles, Sidell & Sykes, P.C. as evidencing his former partnership was responsible for payment for Zophin’s services. However, Sidell never indicated to Zophin that his former partnership would be responsible for the bill. Furthermore, once Sidell left his partners, Bowles and Sykes, payments started coming from Sidell & Associates, P.C., which entity did not include his former partners. The only common denominator for each paying entity was Sidell. We find that the trial court did not err in finding as a matter of law an implied-in-fact contract.
4. Laches and unclean hands. Sidell asserts that Zophin’s delay of filing the complaint in 2007 was intentional in order to cause detriment to Sidell and, as such, Zophin’s claim must fail due to laches. The equitable defense of laches lies “upon a factual finding that there has been unjustified, unreasonable, and prejudicial delay in raising a claim.” Summer Hill Ltd. Partnership v. Double Dixon, Inc., 2010 Mass. App. Div. 109, 111, quoting Santagate v. Tower, 64 Mass. App. Ct. 324, 333 (2005), citing Srebnick v. Lo-Law Transit Mgt., Inc., 29 Mass. App. Ct. 45, 49 (1990). “In order to successfully prevail on a defense of laches, more than mere delay is required. ‘Intrinsic to any equitable barring of [a] claim on the grounds of delay... is the requirement that there be disadvantage to another flowing from that untimeliness.’” Santagate, supra at 334, quoting Wigglesworth v. Cowles, 38 Mass. App. Ct. 420, 431 (1995).
It is difficult to comprehend how Sidell can advance a defense of laches when in an e-mail, dated November 16,2004, to Zophin, he cajoles:
I appreciate your patience regarding the outstanding balance due to your firm. I had hoped that I would be able to pay down the balance sooner. I had intended to pay you from the proceeds of the law suit against Bowles and Sykes. I have still not received a decision from the court from the trial that took place this past February. I do not anticipate much coming out of that law suit because of the malpractice committed by [my attorney] which cost me several thousand dollars. As you know, *48 I plan to sue her, but I will have to wait for the judgment in the original suit.... I will continue to send cash payments as my cash flow allows. I am still suffering from the tremendous loss of income suffered through my dispute with Bowles and Sykes. I thank you once again for your patience and the friendly tone of your letter.
Under the heading “no good deed goes unpunished,” Zophin’s patience and friendliness were twisted by Sidell claiming unfair prejudice due to delay. Furthermore, Sidell failed to exclude from his calculations the three years he sought understanding and patience, which was freely given by Zophin. During the course of litigation, Sidell unnecessarily delayed the resolution of the case, adding years of delay in appealing a motion to dismiss and then abandoning the appeal. K laches lies, it does so with Sidell.
In addition to laches, Sidell also claims Zophin comes to court with “unclean hands” and, as such, his complaint should be dismissed. A party seeking equitable relief must come to the court having acted equitably. Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 814-815 (1945); New England Merchants Nat’l Bank of Boston v. Kann, 363 Mass. 425,428 (1973). The doctrine of unclean hands holds that “‘“the doors of equity” are closed “to one tainted by inequitableness or bad faith relative to the matter in which [sjhe seeks relief, however improper may have been the behavior of the” other party.’ United States v. Perez-Torres, 15 F.3d 403, 407 (5th Cir.1994), quoting from Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 814 (1945).” Fidelity Mgt. & Research Co. v. Ostrander, 40 Mass. App. Ct. 195, 200-201 (1996).
The totality of the behavior that Sidell references to damn Zophin’s case to dismissal was Zophin filing a separate action against Sidell & Associates, P.C. Having already dispensed with this argument in Sidell’s claim of judicial estoppel, we conclude that the trial judge did not err in not dismissing the case due to unclean hands.
5. Motions for directed verdict. Sidell next argues that the trial court erred in denying his motions for “directed verdict.” Although captioned “directed verdict,” Sidell’s motions in this jury-waived trial were for involuntary dismissal pursuant to Mass. R. Civ. P., Rule 41(b) (2). Shade v. Athena Equipment & Supply, Inc., 2010 Mass. App. Div. 68, 69 n.3. Sidefl’s motions sought a ruling as to the insufficiency of Zophin’s evidence. As with a directed verdict motion, the standard of review of a Rule 41(b) (2) motion is whether “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.” Poirier v. Town of Plymouth, 374 Mass. 206, 212 (1978), quoting Raunela v. Hertz Corp., 361 Mass. 341, 343 (1972). See Shade, supra. As previously discussed, all communications, work performed, and Sidell’s repeated individual acknowledgements of the debt owing establish a basis for liability. We find there was ample evidence in support of Zophin’s claim for payment. The court did not err in denying Sidell’s motions for involuntary dismissal.
6. Statute of limitations. In the last of Sidell’s laundry list of averred errors, he argues that pursuant to G.L.c. 260, §2, the six-year statute of limitations for actions in contract, the complaint should have been dismissed or, alternatively, an amount credited to him for the dates of billing that were outside the six-year statute of limitations. *49 In support of his argument, Sidell points to an amount of billing, $7,195.00, which occurred six years prior to the complaint being filed. It is again vexing to attempt to understand SideU’s position in light of the fact that he was making payments on the debt until June 13,2004. Sidell references no authority that would excuse the amounts owed that were six years prior to the filing of the complaint when payment had been ongoing. “Where a partial payment is made on account of an existing indebtedness, the whole debt upon which such payment is made is thereby taken out of the statute of limitations up to that time. The identity of the debt sued on with that upon which the payment was made must of course be established. But if it is shown that the payment was made to apply upon an indebtedness consisting of many items, all of them will thereby be saved from the effect of the statute. The payment is an acknowledgment of the existence of the indebtedness and raises an implied promise at that time to pay the balance.” Our Lady of the Sea Corp. v. Borges, 40 Mass. App. Ct. 484, 491 (1996), quoting Day v. Mayo, 154 Mass. 472, 474 (1891). The court committed no error in declining to dismiss the matter or to credit Sidell $7,195.00 in billing alleged to be outside of the statute of limitations.
Judgment affirmed.

 Sidell formed Bowles, Sidell & Sykes, P.C. in January, 2001. This corporation was renamed Sidell & Associates, P.C. in August, 2001.

 After his termination of employment with Bowles, Sidell and Sykes, PA, payments were made from the Sidell & Associates, P.C. checking account to Zophin on August 9, 2002, November 25,2002, June 9,2003, September 2,2003, and June 13,2004.

 Sidell stated to Zophin in the e-mail, dated March 26,2004, that he would be suing his lawyer who represented him during the arbitration for malpractice and assured Zophin that once he, Sidell, received a malpractice judgment against his attorney, or a settlement, Zophin would be made “hole” [sic]. In addition, Sidell stated in this e-mail that he would be doing his best to get a payment to Zophin within a month. In this e-mail, directly addressing the outstanding amount due, Sidell never mentioned to Zophin that he was seeking payment from the wrong firm.

 Utilizing a “scorched earth policy,” Sidell also brought counterclaims for defamation of character and libel. There was no evidence in the record to support such claims, and they were voluntarily dismissed by Sidell at the close of the evidence.

 On the Web site for the Massachusetts Board of Bar Overseers, the address listed for active attorneys is identified by the Board of Bar Overseers as “ [f] ull office *46 addresses listed for [ajctive... attorneys only.” Sidell listed his full office address as a post office box at a UPS store.

 Contrast an implied-in-law contract, which is a “fictitious contract” that is “created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent.” CORBIN, supra. See Salamon v. Terra, 394 Mass. 857, 859 (1985).

 The relationship between the parties and the subject matter of the services does not fall into the narrow category of business dealings that are mandated by statute to be in writing where an implied-in-fact contract is barred. By way of example, see G.L.c. 259, §7 regarding compensation for broker’s services in securing a loan.